IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DON E. THOMASON and LYNN R. THOMASON,<br><br>    Movants,<br><br><br><br><br>vs.<br><br><br>CITIGROUP GLOBAL MARKETS INC. (f/k/a SALOMON SMITH BARNEY INC. AND d/b/a SMITH BARNEY) and JACK B. GRUBMAN,<br><br>    Respondents. | ORDER GRANTING IN PART MOTION TO VACATE ARBITRATION AWARD, DENYING MOTION FOR ATTORNEY'S FEES, AND DENYING MOTION FOR LEAVE TO CONDUCT DISCOVERY<br><br><br><br>Case No. 2:05-CV-00883 PGC |

      Movants Don and Lynn Thomason ask this court to vacate an arbitration award in favor of respondents Citigroup Global Markets Inc. and Jack Grubman because of the alleged "evident partiality"[1] of Mr. Richard J. Lawrence, the chief arbitrator of their three-member arbitration panel. Mr. Lawrence sits on the board of directors at Oakridge Country Club with Mr. Dean Cottle, who manages two Smith Barney offices. Mr. Lawrence disclosed this relationship with

---

[1] 9 U.S.C. § 10(a)(2).

Mr. Cottle; the Thomasons did not object.  He did not, however, disclose that Oakridge Country Club was one of his legal clients.  The Thomasons therefore claim that Mr. Lawrence had an incentive to rule in favor of Citigroup — formerly Salomon Smith Barney — because Mr. Cottle, an Oakridge board member and Smith Barney manager, "had at least potential influence" over Oakridge's decision to keep sending legal work to Mr. Lawrence.[2]

The Thomasons also claim that the award should be vacated because "the arbitrators exceeded their powers"[3] by "including Mr. [John] Hoffman" — a party whom the Thomasons initially named in their arbitration but later voluntarily dismissed — "in the caption [of the arbitration award] and including express language that Mr. Hoffman is bound as a party by the Award."[4]

After carefully considering all the parties' briefs, the court holds that the arbitration award should not be vacated for "evident partiality" because "evidence of [Mr. Lawrence's] bias or interest" is not "direct, definite and capable of demonstration" but rather "remote, uncertain, or speculative."[5]  The court, however, also holds that the arbitrators exceeded their powers to the extent that they attempted to bind Mr. Hoffman — a non-party — to the award.  The proper remedy for any such violation is to modify the award *only as to Mr. Hoffman*.  The court must

---

[2] Reply of Don and Lynn Thomason to Respondents' Mem. in Opp'n and in Supp. Of Cross-Mot. to Confirm Award (Docket No. 16), at 2.

[3] 9 U.S.C. § 10(a)(4).

[4] Compl. in the Nature of a Mot. to Vacate an NASD Arbitration Award (Docket No. 1), ¶ 74.

[5] *Ormsbee Dev. Co. v. Santa Fe Pacific R.R.*, 668 F.2d 1140, 1147 (10th Cir. 1982).

confirm the remainder of the award.  And because the arbitrators exceeded their powers, an award of attorney's fees is not appropriate.  Finally, given the lack of demonstrable evidence of Mr. Lawrence's partiality, discovery into his business affairs is unwarranted.

    **I.**    **Background**

Don and Lynn Thomason, formerly of Atlanta, Georgia, were Smith Barney clients.  They sought Smith Barney's advice when deciding whether to exercise WorldCom stock options they owned.  They relied on a report from Smith Barney's Wall Street telecom analyst Mr. Jack Grubman and decided not to exercise those options.  Only after the stock market collapse in 2000 and 2001 did government investigations reveal that favorable investment forecasts — such as Mr. Grubman's report on WorldCom — were apparently a quid pro quo for investment banking business.  Stated mildly, the report on which the Thomasons relied was not exactly objective.

These events led the Thomasons to file a claim against their Smith Barney office in Georgia, Mr. Grubman, and Mr. Grubman's supervisor John Hoffman.  Based on an arbitration clause in their account agreement, the case was submitted to the Office of Dispute Resolution of the National Association of Securities Dealers.  Because the Thomasons had since moved to Utah, the arbitration occurred here.  The parties selected three persons to arbitrate their dispute, including Mr. Lawrence as the chairperson.  Each arbitrator disclosed potential conflicts.  In particular, Mr. Lawrence disclosed that he and Mr. Dean Cottle — the manager of a different Smith Barney branch than the one against which the Thomasons filed their claim — served together on the board of directors of Oakridge Country Club.  Despite this disclosure, the Thomasons did not object to Mr. Lawrence's participation.

The arbitration hearings lasted eight days. Afterwards, the parties submitted post-hearing briefs to clarify various legal and factual issues that arose during the hearings. Nearly two months after the hearings ended, the parties received the arbitrators' ruling: a 2-1 decision in favor of Citigroup and Mr. Grubman. The caption on the ruling included the name of Mr. Hoffman even though the Thomasons had voluntarily dismissed Hoffman long before the hearings started. The ruling also stated:

OTHER ISSUES CONSIDERED AND DECIDED

> Respondent John B. Hoffman did not file with the NASD Dispute Resolution a properly executed submission agreement but is required to submit to arbitration pursuant to the NASD Dispute Resolution Code of Arbitration Procedure (Code) and *is bound by the determination of the Panel on all issues submitted*.
>
> By letter dated June 1, 2004, NASD Dispute Resolution received notice that Claimants dismissed without prejudice Respondent John B. Hoffman.[6]

The ruling thus appears on its face to be internally inconsistent. It purports to have "considered and decided" that Mr. Hoffman is "bound by the determination of the Panel on all issues submitted" but states in the next paragraph that the Thomasons dismissed him without prejudice nearly nine months before the arbitration began.

**II.     Standard of Review**

The Federal Arbitration Act "evinces a strong federal policy in favor of arbitration"[7] and instructs courts to confirm arbitration awards "unless the award is vacated, modified, or

---

[6]Award, *In re Matter of Arbitration Between Don E. Thomason and Lynn R. Thomason v. Salomon Smith Barney*, at 2 (attached as Ex. A to Claimants' Compl.) (emphasis added).

[7]*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995).

corrected" for reasons specified by statute.[8] Courts rarely vacate, modify, or correct an arbitration award because "'the standard of review of arbitral awards is among the narrowest known to law.'"[9] Indeed, "courts must exercise great caution when asked to set aside an award" because "[o]nce an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of the award."[10] Thus, courts give extreme deference to both factual and legal conclusions in arbitrators' decisions.[11]

### III. Discussion

The Thomasons ask the court to vacate the arbitration award for two reasons. First, they accuse Mr. Lawrence of "evident partiality" in Citigroup's favor. Second, they claim that the arbitrators exceeded their authority by concluding that Mr. Hoffman — a non-party to the proceedings — was bound by the award.

    A.    *No Clear Evidence of Mr. Lawrence's Partiality or Bias Exists.*

The Thomasons claim that Mr. Lawrence, their chief arbitrator, favored Citigroup because of his own hidden financial interests — specifically, that he sits on the board of Oakridge Country Club with Mr. Cottle, a Smith Barney branch manager, who had the ability to help determine whether Mr. Lawrence would continue to receive legal work from Oakridge. In

---

[8] 9 U.S.C. § 9.

[9] *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (quoting *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000)).

[10] *Aguirre*, 45 F.3d at 1463.

[11] *See Commercial Refrigeration, Inc. v. Layton Constr. Co.*, 319 F. Supp. 2d 1267, 1269 (D. Utah 2004).

other words, Mr. Lawrence allegedly favored Citigroup so that his fellow board member — an Citigroup employee at an unrelated branch — would continue to send him Oakridge legal work.

The United States Court of Appeals for the Tenth Circuit has said that arbitrators are "obligated to disclose possible bias," but "only clear evidence of impropriety . . . justifies the denial of summary confirmation of an arbitration award."[12] In *Ormsbee Development Co. v. Grace*, the Tenth Circuit said that "[f]or an award to be set aside, the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative."[13] To emphasize this rule, the Tenth Circuit repeated it later in *Ormsbee*: "In order to set an award aside, the evidence of bias or interest of an arbitrator must be direct and definite and capable of demonstration."[14]

The Thomasons have not met this heavy burden. Most of the allegations of evident partiality in their complaint are based "on information and belief."[15] And they acknowledge that Mr. Cottle had only "*at least potential* influence" over Mr. Lawrence's ability to receive future legal work from Oakridge — itself a *non-party* to the arbitration.[16] These allegations epitomize the sort of "remote, uncertain, or speculative" accusations of bias that for twenty-four years have

---

[12]*Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).

[13]*Id.*

[14]*Id.* at 1150.

[15]*See* Compl. ¶¶ 48, 51, 52–54.

[16]Reply of Don and Lynn Thomason (Docket No. 16), at 2 (emphasis added).

been insufficient to vacate an arbitration award in the Tenth Circuit. As such, the court cannot vacate the award under 9 U.S.C. § 10(a)(2).

>    B.    The Arbitrators Exceeded Their Powers by Purporting to Bind Mr. Hoffman, a Non-party, to Their Decision.

The FAA permits courts to vacate arbitration awards when "the arbitrators exceeded their powers."[17] As discussed above, the Thomasons invoke this provision as grounds for vacatur under 9 U.S.C. § 10(a)(4), claiming that the arbitrators attempted to bind Mr. Hoffman by their decision.

The arbitration award in this case is facially inconsistent: it notes that the Thomasons voluntarily dismissed Mr. Hoffman as a party before the arbitration hearings occurred, but it also states that Mr. Hoffman "is bound by the determination of the Panel on all issues submitted."[18] As such, is not clear from the document's face whether the arbitrators intended the award to resolve any dispute the Thomasons may have with Mr. Hoffman.

Because the award is ambiguous, it could be interpreted as final, virtually unappealable statement of the rights and liabilities between the Thomasons and Mr. Hoffman. This would be patently unfair to the Thomasons and a textbook example of arbitrators exceeding their powers, particularly when the award itself notes that the Thomasons voluntarily dismissed Mr. Hoffman before the arbitration hearings began.

---

[17] 9 U.S.C. § 10(a)(4).

[18] Award, *In re Matter of Arbitration Between Don E. Thomason and Lynn R. Thomason v. Salomon Smith Barney*, at 2 (attached as Ex. A to Claimants' Compl.) (emphasis added).

To avoid this result, the court exercises its powers under 9 U.S.C. § 11 to modify the award by striking (1) Mr. Hoffman's name from the caption, and (2) the first paragraph under the heading "Other Issues Considered and Decided" on page two.  This result is warranted based on 9 U.S.C. § 11(a) because the two stricken items are "evident material mistake[s] in the description of any person . . . in the award," or based on 9 U.S.C. § 11(b) because the arbitrators "awarded upon a matter not submitted to them."  This modification clarifies that Mr. Hoffman is not a party to the arbitration and is not bound by the award.  The Thomasons may therefore initiate separate proceedings against him if they so desire.

  C. *Attorney's Fees Are Not Warranted.*

Citigroup has asked the court to award its attorney's fees incurred during this proceeding.  Both sides cite a provision in the Utah Arbitration Act — which the Utah Supreme Court has held is not preempted by the FAA[19] — that permits a court to award attorney's fees to the prevailing party in an motion to vacate or confirm an award.[20]  Since this action appears to be based entirely on the FAA, there is some question as to whether Utah law would apply here and allow the court to award attorney's fees.  But the court need not reach the issue, for even if it did apply, both parties "prevail[ed]" in this case: Citigroup successfully defended the award as to itself and Mr. Grubman, and the Thomasons successfully modified it as to Mr. Hoffman.  In these circumstances, neither side is entitled to attorney's fees.

---

[19]*See Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 953 (Utah 1996).

[20]*See* Utah Code Ann. § 78-31a-126(3).

      D.      *The Thomasons' Motion for Leave to Conduct Discovery Is Denied.*

After filing their motion to vacate, the Thomasons filed an additional motion seeking leave to conduct discovery regarding Mr. Lawrence's alleged conflicts. The court DENIES this motion.

Before a court will allow "post-award discovery into potential arbitrator bias," the movants must present "clear evidence of impropriety."[21] As discussed above, the Thomasons have failed to present such evidence — instead of being "direct, definite and capable of demonstration," the Thomasons' evidence of Mr. Lawrence's alleged partiality is "remote, uncertain, or speculative."[22] As in the unpublished Tenth Circuit case *Public Service Co. of Oklahoma v. Burlington Northern Railroad Co.*,[23] "the reasons advanced in support of the need for discovery are insufficient on their face to justify an investigation. And, the asserted need to investigate further essentially to see if there is a justification to investigate further is both circular and wholly speculative."[24] The court therefore denies the Thomasons' motion for leave to conduct discovery.

## CONCLUSION

The Thomasons' motion to vacate the arbitration award (# 1) is GRANTED IN PART. The court confirms the award in its entirety as to respondents Citigroup and Jack Grubman, but

---

[21] *Lucent Tech., Inc. v. Tatung Co.*, 379 F.3d 24, 32 (2d Cir. 2004).

[22] *Ormsbee*, 668 F.2d at 1147.

[23] No. 95-5017, 1995 WL 640375 (10th Cir. Oct. 20, 1995).

[24] *Id.* at *5.

modifies the award as outlined above as to John Hoffman.  Citigroup's motion to confirm the arbitration award (# 7) is GRANTED IN PART for those same reasons.  The court DENIES Citigroup's motion for attorney's fees (# 7).  The court also DENIES the Thomasons' motion for leave to conduct discovery and for an evidentiary hearing (# 18).  The clerk's office is directed to close the case.

    SO ORDERED.

    DATED this 18th day of January, 2006.

                                BY THE COURT:

                                _____

                                Paul G. Cassell
                                United States District Judge